I'm Patrick Davis. I'm here on behalf of Ancala Holdings and Ancala Global. It is important, Your Honors, to consider the context and the purpose of these contracts when evaluating the legal issues before you. On the theory of mismanagement of the golf course, would it be forever that they had to manage it at the standard of an exclusive private country club? How long would it be? Well, Your Honor, that would be, frankly, probably an issue of fact which would have to be proven by parole evidence with regard to intent of the parties because as I started... I mean, it's just wide open at this point. It could be forever? Well, no, Your Honor, because these agreements, the sale and the management of this country club in the midst of hundreds of lots of the Ancala development, those agreements were made to promote and maintain the value of the lots which Ancala Global and Ancala Holdings and its predecessors were selling. In other words, the better the golf course, the greater the stature of the golf course, the greater the value of the lots because... I'm trying to figure out the statute of limitations issue and you claim it's a continuing wrong and I'm wondering how long it continues. Does it continue forever? I mean, 50 years from now, those people will still like to live near a really good golf course, I imagine. Well, Your Honor, it would continue until the purpose of the contract is served which would be the sale of all Ancala's lots because it's a developer. They're not homes. They're going on forever. Oh, you mean once they finish selling the lots, then the place can go downhill? Well, they would have no interest to complain after that. And in addition, Your Honor... Why would they have an interest to complain? Doesn't that maintain the value of their homes? I don't understand why you're giving away this point. I'm sorry. I didn't understand the question. Doesn't the value... If you stop watering the golf course in Phoenix and the golf course turns brown and nobody decides to play there, then your backyard that backs up to the fourth hole has a really lousy view. And your home is not worth as much as it was when you bought it and when they were maintaining a premium course. I absolutely agree, Your Honor. And there are some possible perspective claims about representations to homeowners while Ancala is selling these units. But it could go on forever. I don't believe so on it, Your Honor. I think it could go on as long as Ancala had the lots and Ancala... Homeowners don't buy any rights from the developer with respect to the golf course? There are rights that are set forth in the Country Club Agreement and the CC&Rs. None of those are... Although they are referenced in these agreements. How many undeveloped homes are there? How many undeveloped lots do you still have? Frankly, Your Honor, I do not know. But isn't that subject to the Barton Agreements? Isn't that the problem with the Barton Agreements? No, Your Honor. The Barton Agreements are memberships through a... In the 1991 agreement, there's an Exhibit H, which lists 108 original members, which are intermittently called Original Members, Barton Members. Because of change in fees or cost of those memberships, Ancala received direct interest in those memberships upon their transfer. The golf court clubs provides that these member... Rules provide that these members, if they sell their property, move, and a new owner comes in and wants their membership, there is a transfer fee paid by the new owner to the club... Are we talking now about those Barton memberships? Yes. Let me ask you a question about the Barton memberships. I was trying to figure out who has the burden of proving something. The plaintiff here has the burden of proof. And Celotex versus... I can't remember who the defendant was in Celotex. But as I recall that trilogy, Celotex, Anderson, and Matsushita, says that all the party without the burden of proof has to do in a motion for summary judgment is point. And then the party with the burden of proof has to submit evidence such that a jury would be allowed, if it believed that evidence, to return a verdict for the party. So on the Barton properties, it's the plaintiff's burden to submit some evidence that there are some sales and some fees due that have not been paid. On the other hand, statute of limitations is an affirmative defense. The party with an affirmative defense has the burden to produce evidence on the affirmative defense. Maybe that means that the defendants have to prove that whatever sales there were, the statute has run on. I can't figure it out, and I didn't see any discussion in the briefs of this issue. Could you explain to me now how to analyze it? Well, Your Honor, perhaps I didn't state it clearly enough, but there's a citation to a Carter decision in the brief, which is a Ninth Circuit opinion, which imposes the duty upon the party asserting the affirmative defense to prove the date when the claim accrued. And in the Carter case... You didn't state what the date was in any of the papers that your side submitted. Well, Your Honor, that's correct, because the memberships are identified in Exhibit H. The Country Club, because they are the ones who have to facilitate the transfer and receive the funds, are in possession of the records to prove that. There is a citation in the record, however, to Mr. Barton's deposition, where he testified in 2001 that there were still Barton members who owned property. Therefore, their property and their memberships are still subject to transfer. Only upon that eventual transfer sometime after 2001 would Oncala be entitled to bring a claim. Were there any Barton memberships that you hadn't been paid for? In other words, I think what we're asking is, it seems like if tomorrow a Barton membership was sold and then your client didn't get paid by the Country Club, that the limitations period would not have started on that because it didn't accrue until today. But when this suit was in front of the judge, was there any Barton memberships that had been sold for which you had not been paid? Or was it just an absence of evidence that there were any one way or the other? Is it just an abstract question? It was an allegation upon information and belief, Your Honor, because as evidenced by the record, the defendants had paid some – Oncala had received some Barton membership transfer fees. There is also an allegation in the complaint and various pleadings that we were entitled to accountings for these records. And, in fact, as of 1998 – You don't defeat summary judgment on allegations and complaints. Come summary judgment, you need evidence. So it was you who was claiming that some Barton memberships had been sold and you hadn't gotten your fee, and was there any evidence that any had? Your Honor, I don't know of any specific citation in the record to a specific sale for which we didn't get paid. The complaint seeks to establish and recover those fees which accrued six years prior to the complaint. Are you – are you – did you allege that there was some kind of fraud that would have disguised this fact, that you're not responsible for producing this at this time because it's been withheld from you wrongfully? There was a fraud allegation in the complaint in that – You keep talking about – I'm sorry. Go ahead. I'm sorry. You keep talking about the complaint, and, frankly, I don't care what it says if it's a Rule 56 motion, but maybe I'm confused. Maybe this was a Rule 12b6 motion, in which case what the complaint says is critical. Am I mistaken in thinking it was a Rule 56 summary judgment motion? Was it a 12b6? No, Your Honor, it was a summary judgment motion. I don't care about the complaint. If I was a district judge and this motion came in, and they wanted to dismiss the Barton claim, and I said, well, what evidence is that you haven't been paid on a Barton claim? And you say, well, I don't have any. Then why wouldn't I grant a summary judgment? I'd say, well, when you get one, file suit, and we'll look at that one. But you don't have any right now, so I'm going to dismiss it. Well, Your Honor, there's a 1998 letter from the defendants acknowledging these disagreement and prior payments and a method of accounting for them prospectively. There's also Mr. Barton's testimony that there are still Barton members out there. My concern, frankly, is that this order prospectively bars those claims. In fact, that's what it purports to say. It says all Barton claims, Barton membership claims, are dismissed because the claims arose in 1991 when the defendants failed to run a premium private country club. I agree that's strange, but I also want to point out, Your Honor, that the response to the summary judgment filed by Oncala points out in a footnote that the motion is not with respect to count two, which is the Barton membership complaint. Therefore, it is not in the response responding as if it's a motion to grant summary judgment on that complaint. Do you interpret the order to mean that if tomorrow a lot was sold that a Barton membership held for years and now the money on the transfer has to go to the country club and then you have an interest, that this order bars that claim? I believe that's what it says, Your Honor, and I'll tell you why. Because according to the order, all these claims, all Oncala claims were barred in 1997. These agreements were amended in 1998 with regard to certain memberships because additional lots were granted. In that agreement, all the agreements were reaffirmed. The Court, again, barred everything as of 1997. Well, could you tell us the excerpt page you're talking about? I thought you just lost on the Barton claims that you said in your complaint that the sales had been made and the fees hadn't been paid. I thought that's all the judgment meant. You understand, I'm asking the same question as Judge Whaley. I cited it in the brief, Your Honor, and what I'm responding to. I'm sure you have a tabbed and marked-up copy right there. What's bothering you about this District Court's decision? Okay. Well, why don't you hold on. Well, Your Honor, it's Appendix 360, Lines 4 and 8. Lines 4 and 8. Funny, I was looking at exactly that page. It says the plaintiff's claims for breach of contract with respect to the Barton memberships were barred by the 6-year statute but as for a claim you don't have yet, because there hadn't been any sale yet, I don't understand where that speaks to it. Well, Your Honor, the ruling purports to say that the claims with regard to the Barton memberships accrued in 1991, which in effect is the date of the agreement. Okay, I've got it. Thank you. I believe I'm over, Your Honor. Thank you, Counsel. Counsel, do you construe the order to mean that all Barton claims are barred now because they all accrued in 1991? I would agree that if the Barton membership has not yet been sold, then the obligation to pay upon the sale of that membership has not yet accrued. So the only ones that are barred are those that are more than 6 years from? The only ones that could be barred are the ones that were alleged in the complaint. That's what the order purports to bar. There wasn't a lot of discussion about the failure, the claim regarding the failure to maintain or operate the Oncala Country Club as a premium private country club, which, frankly, is where most of the discussion and briefing took place. I don't think there are many clearer cases of a bar by the statute of limitations than this, where a lawsuit was threatened, a draft complaint was sent, and then more than 6 years elapsed before they actually file what is essentially the same complaint that they originally threatened. The district court got it right in this case and found that the claims were barred by the statute of limitations because that clearly showed that they were aware of the alleged breach more than 6 years before. The district court rejected the plaintiff's theory of this continuing breach and in part cited Ford v. International Harvester, a Ninth Circuit case that arose out of the Eastern District of Washington, oddly enough. And in that case, this court said, this court accords great weight to the determination as to the law of a particular state made by a district judge sitting in that state. Did anything new happen within the 6-year period going back from filing, or did the plaintiffs complain pretty much early on that the golf course was not being maintained right and it just continued to be? I think the record reflects that the complaints were pretty much the same. The plaintiff's representative, Mr. Barton, testified in deposition that, in his opinion, the golf course had never been operated as a premium private country club. They let the public play. They let the public play and there were a list of other things. What this really was was a dispute about what premium private country club means. So why is that a continuing obligation? In other words, if I go into the country club today with guests and I sit down in the restaurant and I get really bad service and I see a cockroach running along the baseboard and I comment to my companions, gee, this is not a first class operation, they're not running this, this is supposed to be like a premium, have I triggered the statute of limitations? I don't think so because that's the way it's been from the beginning. Okay, but so what? The following week it looks like it gets cured. I come back, the service is good, the restaurant is clean, the food's terrific. But the record doesn't support that. Well, it supports that in 1994 we had this complaint. A complaint circulated, it was not filed, but a complaint was circulated. Right. Which is sort of a, it's kind of like pulling the manager aside and saying, hey, look, I just want to let you know, you know, things aren't running well around here. I don't like the way things are going, and if I have to I'm going to file a lawsuit, but I just want to let you know, you know, things aren't going well. Let's see if we can get it fixed. Does that trigger the statute of limitations? Why isn't this operation ongoing? The way I see that is they circulate this complaint saying this isn't premium private the way we had envisioned it. And the defendants say, yes, this is premium private. This is the way we run our other premium private country clubs around the country. American Golf manages a number of these. And so what we have is then the dispute is ripe. Both sides take different positions about what that term means. The plaintiffs then did nothing for more than six years to resolve that dispute. That dispute didn't change over the course of the next six years. Well, but over the course of the next six years, presumably the golf course has sort of been difficult. You can imagine the situation in which the golf course sort of underwent different kinds of different managers or different greenkeepers who had a different level of care. And some months it looked really good, and other years it looked really bad. The record doesn't support that theory, though. Was there ever a month when they excluded the public? They said, okay, we're shaping up. They excluded the public. You had to be a member. There is nothing of that in the record. There was one other thing that was really not a matter of subjective evaluation. It was really objective about what a fancy private country club was like. Do you remember what it was? I don't. I can't find it in my blue tapes. Counsel, even if you're right that the level of care has been the same and it's a dispute as to whether it's satisfied the duty to run a premium country of operation or not, why doesn't the claim that it's been run this way from the beginning only serve as a bar to any damages older than six years? Arizona's law doesn't recognize that type of continuing obligation theory. The case in which Arizona said it didn't recognize such a thing because I've seen lots of cases from other states in which they said that they did. But those cases from other states all involve situations like an installment contract where there is a regular, periodic, repeated obligation to pay money. The cases that I've seen, many of these are to maintain a particular kind of system. Or they will involve a discreet, identifiable damage. For instance, I think it was the Bowman case cited by the plaintiffs. The representation was made that a unit I think in Arizona it was said that Arizona is rejecting a continuing obligation. I think the district court got it right where the only exception that's been recognized was the builder supply case in which it was an installment contract. Otherwise, Arizona has not recognized any exception. That was quite a different case, though, because there you did have discreet things that needed to be done. There were some questions as to whether you needed to wait to see the whole building at one time. I think you're thinking of the pioneer roofing where they said you could wait until the entire contract was done. I don't even think that's a continuous breach case. The one I'm talking about is builder supply where there was I believe it was a hauling contract where they made discreet hauling contracts. You could look at them as individual contracts. They hauled goods for the plaintiff, and there was a dispute about an underpayment for each of the shipments. Are you suggesting then that the Arizona rule is different from other states on this proposition? Well, it certainly hasn't been extended as far as some of the cases that I saw that were cited. But do you have a case that would sort of permanently lock me into a position that Arizona has rejected? No, I would acknowledge that it's by inference that they have accepted it only on that one limited what the district court called a narrow exception. On those periodic payments cases, as I understand it, a new cause of action accrues each time a payment is missed. That's the theory. And that would be just like the Barton fees in this case, right? I agree with that, yes. Is there any evidence one way or another of any Barton memberships Not that I have seen. accruing fees within the six years prior to filing? Not that I have seen in the record, Your Honor, no. Again, this is I don't want to interrupt. No, go ahead. I think that's also a dispute about what a term means. There was a dispute about how to calculate the amounts owed under the Barton memberships. In response to my question about how long Manfall had an obligation to maintain the golf course free conditions, Mr. Davis has said that it was just a sale or a loss. I don't see that anywhere in the contract. I don't see a term. It's not in the record, but I understand that there are some 30-odd that are still at issue. Even if Mr. Davis' characterization of the obligation is only good until all loss has been sold, then it would appear that the obligation is still current. I think that's right. So you don't dispute that Manfall is continuing its current obligation to maintain the golf course? The obligation is still the terms of the contract are still in place. What is at issue or what the real dispute was about is what does the term premium private mean? And that dispute began almost immediately and crystallized and has never really changed. The plaintiff sat on its rights and didn't do anything to bring that dispute to a head, despite threatening the lawsuit more than six years before actually filing it. The district court has said that the district court's determination as to the law of the state in which it sits should be accorded great weight, and I think this court should affirm the judgment.  Thank you, counsel. Oncala Holdings v. Price is submitted. And we are adjourned for the day. All rise. This court is adjourned. Mr. Baker? No, Mr. Baker. Oh, how are you? I'm good, how are you? They sent you down. It's not at all what you thought it would be.
judges: Kleinfeld, Bybee, Whaley